# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**DEBI WALKER,**

   **Plaintiff,**

**-vs-**                                                   **Case No.  6:13-cv-798-Orl-18DAB**

**RUBEN AND ROSENTHAL, INC.,**

   **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

   This cause came on for consideration without oral argument on the following motion filed

herein:

| |
|---|
| **MOTION:   MOTION FOR ENTRY OF DEFAULT JUDGMENT (Doc. No. 15)** |
| **FILED:      August 27, 2013** |
| _____ |
| **THEREON** it is **RECOMMENDED** that the motion be **GRANTED** in part. |

   As set forth in the motion, Plaintiff brought this action for damages under the Fair Debt

Collection Practices Act, 15 U.S.C. §1692, *et seq*. ("the Act") (Doc. 1).  The Complaint was served

on Defendant's registered agent, but no Answer or other response was filed (Docs. 7, 8). A Clerk's

default was entered (Doc. 9), and Plaintiff now moves for judgment.  The motion is supported by the

Affidavits of Plaintiff and counsel, and a memorandum with exhibits. No response to the motion has

been filed.

   *Standard of Law*

   The effect of the entry of a default is that all of the factual allegations in the Complaint are

taken as true, save for the amount of unspecified damages. Thus, if liability is well-pled in the

complaint, it is established by the entry of a default. *Buchanan v. Bowman,* 820 F.2d 359, 361 (11th

Cir. 1987).  A court may enter a default judgment only if the factual allegations of the complaint,

which are assumed to be true, provide a sufficient legal basis for entry of a default judgment.

*Nishimatsu Constr. Co. v. Houston Nat'l Bank,* 515 F.2d 1200, 1206 (5th Cir. 1975) ("The defendant

is not held to admit facts that are not well-pleaded or to admit conclusions of law.").

*The allegations of the Complaint*

According to the well pled allegations of the Complaint (Doc. 1):

Plaintiff was a consumer whom allegedly owed a consumer debt ("Debt"), and Defendant was

a debt collector, within the meaning of the Act. In December 2012, Defendant began to initiate

telephone calls to Plaintiff in an attempt to collect the Debt.  Throughout December 2012, each day,

Defendant initiated at least two (2) telephone calls to Plaintiff.  The repetitive calls made by

Defendant to Plaintiff were disturbing, harassing, and had the effect of making Plaintiff feel concerned

and suspicious about answering the telephone.

In or around December 2012, during the course of one of the aforementioned telephone calls

between Plaintiff and Defendant, Plaintiff informed Defendant that she did not owe the Debt and

therefore would not pay it.  In response, Defendant told Plaintiff: "The reason you refuse to pay the

debt is because you are poor and live in section eight (8) housing."

During the course of the aforementioned telephone call between Plaintiff and Defendant,

Defendant also threatened to file a lawsuit against Plaintiff for the Debt.  Plaintiff avers that

Defendant has not filed a lawsuit against Plaintiff for the Debt and, upon information and belief, at

the time of making the aforementioned threat, Defendant had no authority to and no intention of filing

a lawsuit against Plaintiff for the Debt.

During the course of the aforementioned telephone call between Plaintiff and Defendant,

Defendant further threatened to seize Plaintiff's automobile if Plaintiff failed to pay the Debt.

Defendant has not seized Plaintiff's automobile and, Plaintiff avers that upon information and belief, Defendant has no authority to seize Plaintiff's automobile.   Plaintiff alleges that Defendant's representation that it would seize Plaintiff's automobile if Plaintiff failed to pay the Debt had the effect of conveying to an unsophisticated consumer that Defendant could seize Plaintiff's automobile prior to filing a lawsuit against Plaintiff for the Debt or immediately upon the filing of a lawsuit against Plaintiff for the Debt.

During the course of the aforementioned telephone call between Plaintiff and Defendant, Defendant further told Plaintiff that if she failed to pay the Debt, she faced the risk of being imprisoned. Defendant's representation that Plaintiff could be imprisoned had the effect of conveying to an unsophisticated consumer that Plaintiff had engaged in criminal conduct with respect to the Debt.   Plaintiff had not engaged in criminal conduct with respect to the Debt.   Defendant's representation that Plaintiff had engaged in criminal conduct was false, deceptive and/or misleading given that Plaintiff had not engaged in the aforesaid conduct relative to the Debt.   Defendant's representation that Plaintiff could be imprisoned relative to the debt on which it was attempting to collect misrepresented the character, status and/or legal nature of the Debt. Defendant's representation that Plaintiff could be imprisoned was a statement made by Defendant to Plaintiff in an attempt to disgrace Plaintiff.

Plaintiff asserts that these actions violated the Act and, as a result, Plaintiff has suffered, and continues to suffer, personal humiliation, embarrassment, mental anguish and emotional distress.

*Analysis*

The above allegations are supported by the Affidavit of Plaintiff.  Accepting these allegations as true, the Court finds Defendant has violated the Act, which prohibits a wide variety of practices. The Act provides, for example:

§ 1692d. **Harassment or abuse**

A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. *Without limiting the general application of the foregoing*, the following conduct is a violation of this section:

(1) The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person.

(2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.

(3) The publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency or to persons meeting the requirements of section 1681a(f) or 1681b(3) of this title.

(4) The advertisement for sale of any debt to coerce payment of the debt.

(5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

(6) Except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's identity.

15 U.S.C.A. § 1692d (emphasis added).

While this portion of the Act lists several discrete violations, "§ 1692d is explicitly not limited to the conduct proscribed by subsections (1)-(6)*." Jeter v. Credit Bureau, Inc*., 760 F.2d 1168, 1178 (11th Cir. 1985); *Meadows v. Franklin Collection Service, Inc.,* 414 Fed.Appx. 230, 232-233 (11th Cir. 2011) (noting the subsections are "a non-exhaustive list of prohibited conduct."). Indeed, the specific subsections of the Act "merely provide[] an *illustration* of the sort of conduct that is prohibited by § 1692d*." Diaz v. D.L. Recovery Corp*., 486 F.Supp.2d 474, 477 (E.D. Pa. 2007) (emphasis in original). To "help ensure the most complete protection possible, the court has adopted a 'consumer protective standard,' which means that '[c]laims under § 1692d should be viewed from the perspective of a consumer whose circumstances makes him relatively more susceptible to harassment, oppression or abuse.'" *Winberry v. United Collection Bureau, Inc*., 697 F.Supp.2d 1279, 1286 (M.D. Ala. 2010) (citing *Jeter, supra*).

In addition to violations of § 1692d, Plaintiff's allegations support a finding that Defendant:

- Used false, deceptive, misleading and unfair or unconscionable means to collect or attempt to collect an alleged debt in violation of 15 U.S.C. § I 692e;

- Represented or implied that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action in violation of 15 U.S.C. §1692e(4);

- Threatened to take action that cannot legally or is not intended to be taken in violation of 15 U.S.C. §1692e(5);

- Falsely represented or implied that a consumer committed a crime or other conduct in order to disgrace the consumer in violation of 15 U.S.C. § 1 692e(7);

- Used false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning the consumer in violation of 15 U.S.C. §1692e(10);

- Used unfair and/or unconscionable means to collect or attempt to collect a debt in violation of 15 U.S.C. §1692f;

- Threatened to take any nonjudicial action to effect dispossession or disablement of property if there is there is no present right to possession of the property claimed as collateral through an enforceable security interest, if there is no present intention to take possession of the property or if the property is exempt by law from such dispossession or disablement in violation of 15 U.S.C. §1692f(6).

The Court concludes that the uncontested allegations of the Complaint and the Affidavit support liability under the Act.   Unfortunately, however, the papers filed are inadequate to establish the amount of damages sought by Plaintiff.

As noted by Plaintiff, the Act provides for payment of any actual damages and statutory damages up to $1,000. 15 U.S.C. §1692k.  Although Plaintiff contends that she seeks to recover "$1,000 in statutory damages and $3,000.00 for actual damages, as detailed in Plaintiff's affidavit," the Affidavit does not adequately establish any "actual damages."  While Plaintiff attests to the fact that she was anxious, worried, upset and stressed as a result of the actions of Defendant, she does not explain how this emotional upset is worth $3,000, as opposed to, say, $500 or $500,000. While mental distress is a legitimate source of recoverable compensatory damages, *Minnifield v. Johnson & Freedman, LLC,* 448 Fed.Appx. 914, 916-917 (11th Cir. 2011) ("Actual damages under the FDCPA include damages for emotional distress"), damages must be *proved. Johnson v. Eaton*, 80 F.3d 148, 152 (5th Cir.1996) (noting that the FDCPA not only requires that the debt collector compensate the debtor for any monetary damages, but also for "emotional distress or other injury that the debtors can prove the debt collector caused.").  While the Court does not require expert witnesses or medical bills to show emotional damage, Plaintiff here provides no basis (in argument or otherwise) sufficient to establish that the emotional harm attested to here warrants the requested amount of $3,000.  It appears to the Court that Plaintiff simply picked this number out of the air.  On this record, absent an explanation justifying an award of three times the maximum statutory penalty[1], the Court cannot recommend such an award.

As for the statutory damages, the FDCPA states: "In determining the amount of liability in any action under subsection (a) of this section, the court shall consider, among other relevant factors—(1) ... the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional ...." 15 U.S.C. § 1692k(b)(1).  While Plaintiff provides no argument of substance here, the Court finds that the well

---

[1]Plaintiff cites numerous non-binding cases from other jurisdictions where other plaintiffs were awarded emotional damages in various amounts.  Absent any explanation as to how the facts of those cases support the amount of the award sought here, the Court is unpersuaded.

pled allegations and the uncontested averments in the Affidavit of Plaintiff establish numerous violations of the Act which, by their very nature, warrant the imposition of the full statutory penalty of $1,000.

Plaintiff's counsel also seeks attorney's fees and costs in the total amount of $3,414.50, for prosecuting this matter.  Plaintiff is entitled to an award of reasonable fees and court costs. *See* 15 U.S.C. § 1692k(a)(3); *Hollis v. Roberts*, 984 F.2d 1159, 1161 (11th Cir. 1993) ("The Fair Debt Collection Practices Act authorizes the award of the costs of the action and a "reasonable attorney's fee as determined by the court," 15 U.S.C. § 1692k(a)(3), in addition to damages to any successful plaintiff."). According to the papers filed, Plaintiff utilized the services of *four* attorneys and a paralegal, billing at rates ranging from $115 (paralegal) to $395 an hour.  As support for this amount, counsel relies on cases in other districts and the "Laffey Matrix."  This evidence fails to persuade. *See Raimondi v. Zakheim & Lavrar, P.A.*, 2012 WL 1382255, at *6 (M.D. Fla. Apr.5, 2012) (collecting Middle District of Florida cases rejecting reliance on Laffey Matrix and the Consumer Law Attorney Survey); *Cook v. Law Offices of Forster & Garbus,* 2010 WL 4941439, at *3 (M.D.Fla. Nov. 3, 2010) ("the Laffey Matrix is not reflective of prevailing market rates in the Middle District of Florida"); *Sharke v. Midnight Velvet, Inc.*, 2013 WL 2467786, *2 (M.D. Fla. June 7, 2013).

As this Court has noted in other FDCPA cases,[2] in determining the reasonableness of attorneys' fees pursuant to a fee-shifting statute, the lodestar is generally recognized as a reasonable fee. *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992). The lodestar is calculated by multiplying the number of hours reasonably expended by a reasonable hourly rate. "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Hous. Auth. of City of*

---

[2]*Rubio v. FMS, Inc.*, Case No. 6:10-cv-00468-MSS-DAB (Orlando, Jun 3, 2011), adopting the Report of the undersigned issued April 26, 2011 (Doc. No. 30 in that case); *Penney v. Williams & Fudge, Inc.,* Case No. 6:10-cv-452-DAB (Orlando, January 5, 2012).

*Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988) (*citing Blum v. Stenson*, 465 U.S. 886, 895-96 n.

11 (1984)). Additional factors to be considered in determining a reasonable fee include:

> (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill
> required to perform the legal services properly; (4) preclusion of other employment;
> (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations
> imposed by the client or circumstances; (8) the amount involved and the results
> obtained; (9) the experience, reputation and ability of the attorneys; (10) the
> undesirability of the case; (11) the nature and length of the professional relationship
> with the client; and (12) awards in similar cases.

*Norman*, 836 F.2d at 1292 (*citing Johnson v. Ga. Highway Express, Inc*., 488 F.2d 714, 717-19 (5th

Cir. 1974)).

"The fee applicant bears the burden of establishing entitlement and documenting the

appropriate hours and hourly rate." *Id.* at 1303.  An applicant may meet his or her burden by

producing either direct evidence of rates charged under similar circumstances, or opinion evidence

of reasonable rates. *Norman*, 836 F.2d at 1299.  In addition, the court may use its own expertise and

judgment to make an appropriate independent assessment of the value of an attorney's services. *Id.*

at 1303. With respect to hours, if an applicant's documentation "is inadequate, the district court may

reduce the award accordingly." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  "Counsel for the

prevailing party should make a good faith effort to exclude from a fee request hours that are excessive,

redundant, or otherwise unnecessary." *Id.* at 434.

As this Court has observed in a similar context, it does not require numerous attorneys to

prosecute a one-plaintiff case under the Act, especially where, as here, only one attorney made an

appearance in the case, and that attorney claims an expertise in such cases. *See Penney v. Williams*

*& Fudge, Inc.,* Case No. 6:10-cv-452-DAB (Orlando, January 5, 2012).  While Plaintiff is certainly

free to choose whatever staffing arrangements she desires in litigating a case, she is only entitled to

reimbursement of reasonable costs from her adversary.  Upon review, the Court finds that the number

of professionals used here necessarily inflated the bill.  The time entries include "staff " or "firm"

meetings, and time spent in review of other's work (including matters relating to opening the file, drafting and reviewing the retainer agreement, and other work).  Additionally, the time sheets reflect other tasks not properly visited upon one's adversary, such as time spent drafting *pro hac vice* applications.  This case was not contested and the few papers filed do not reflect novel or difficult issues requiring this level of staffing.  While the total amount sought is not particularly excessive, the fee claim includes these non-compensable items and a reduction is warranted.  Unfortunately, the practice of block billing means that counsel has included compensable and non compensable tasks in the same time entry, requiring the Court to estimate an appropriate reduction.  Of the 12.9 total hours, the Court deducts approximately one hour of paralegal time and slightly more than 30 minutes of both partner time and associate time, and finds the following hours to be compensable:

> Partner level: 4 hours
>
> Associate: 2.5 hours
>
> Paralegal 4.0 hours

As for the rates to be charged for this work, the going rate *in the community* is the most critical factor in setting the fee rate. *See Martin v. University of South Alabama,* 911 F.2d 604, 610 (11th Cir. 1990).  The relevant community here is the Middle District of Florida, and Plaintiff cites no case where this district awarded these rates for similar services.  Absent sufficient evidence to support the rates sought, the Court relies on its own expertise,  *Norman, supra,* 836 F.2d at 1303, and considers the *Johnson* factors[3] in determining a reasonable rate.  As noted above, the issues involved in this relatively straightforward matter were neither novel nor difficult and, although trial counsel was well-

---

[3] The factors to be considered are: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal services properly; (4) preclusion of other employment; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson v. Ga. Highway Express, Inc*., 488 F.2d 714, 717-19 (5th Cir. 1974)).

qualified, no exceptional experience or skill was required here.  There is no evidence that the case was

undesirable, nor that counsel was precluded from other employment due to the pendency of this

action.  The customary fee for such cases is, as assumed to be the case here, contingent, and there is

no evidence that the professional relationship between Plaintiff and counsel extended beyond this

matter, or that time limitations were an issue.  Finally, the total amount of damages involved was

(relatively speaking) minimal, and the matter proceeded to default judgment with no discovery, no

depositions, mediation, hearings or trial.

As recently noted by Judge Bucklew, rates of $300 for partner level work, $175 for associate

work, and $100 for paralegal services are reasonable for consumer protection litigation in this district.

*Sharke v. Midnight Velvet, Inc*., *supra, citing Hepsen v. J.C. Christensen and Assos., Inc.,* 394 Fed.

Appx. 597, 599 (11th Cir.2010) (affirming finding that $300.00 was a reasonable rate for lead

counsel—with 25 years of experience in consumer law—in a Fair Debt Collection Practices Act trial

in the Middle District of Florida); *Schoonover v. Receivables Perf. Mgmt*., No.

8:11–cv–00118–T–37–EAJ (M.D. Fla. Nov. 28, 2011) (finding $250.00 was reasonable rate for

attorney practicing 15 years, with 10 years focused on the FDCPA, for FDCPA action in Tampa),

*Winkler v. CACH, LLC*, 8:11–cv–2358–T–24–AEP (M.D. Fla. July 2, 2012) (rejecting requested

$350.00 rate).  Consistent with the weight of authority in this district with respect to awards in similar

cases, the Court recommends an award of fees as follows:

| | | |
|---|---|---|
| Partner level: | 4 hours at $300 | $1,200.00 |
| Associate: | 2.5 hours at $175 | $437.50 |
| Paralegal: | 4.0 hours at $100 | $400 |
| | Total: | $2,037.50. |

Costs should be taxed by the Clerk in the normal course.

### *Conclusion*

The Court **respectfully recommends** that the motion be **granted, in part,** and judgment be awarded in favor of Plaintiff for $1,000 statutory damages, $2,037.50 for attorney's fees, and costs to be taxed by the Clerk.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on September 19, 2013.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy